## Higgins v. Lessig.

1. *Rewards—Contracts for.*—A person having an old harness of the value of $15 stolen, becoming much excited over the matter, exclaimed: "I will give $100 to any man who will find out who the thief is, and I will give a lawyer $100 for prosecuting him. *It was held*, that the language used, under the circumstances, did not show an intention to contract to pay the reward, but was in the nature of an explosion of wrath against the supposed thief, coupled with boasting and bluster about prosecuting him.

2. *Rewards—Burden of Proof.*—A person claiming a reward for obtaining information concerning the identity of a thief, must show that he was the first to give the desired information, for if he was not the first to gain and impart the information, he can not recover.

3. *Rewards—Information Already Possessed.*—In an action to recover the amount of a reward offered for information concerning the identity of a thief, it was competent for the defendant to show that the information given him, and for which the recovery was claimed, was in his possession before, and was not new to him.

4. *Instructions—Rewards for Information Concerning Thief.*—In a suit to recover the amount of a reward for the discovery of a person who stole a harness, *it was held* error to instruct the jury to find for the plaintiff, if he discovered who stole the harness and informed the defendant, without requiring that he should have been the first person who ascertained the facts leading to the discovery of the thief, or the first who communicated it to the defendant.

**Memorandum.**—Action to recover a reward. Appeal from the Circuit Court of Knox County; the Hon. ARTHUR A. SMITH, Judge, presiding. Heard in this court at the May term, 1893. Opinion filed December 12, 1893.

The statement of facts is contained in the opinion of the court.

J. A. McKENZIE, attorney for appellant.

M. J. DOUGHERTY, attorney for appellee.

OPINION OF THE COURT, CARTWRIGHT, J.

Appellant was the owner of a set of old double harness, worth perhaps $15, which was taken from his premises

without his knowledge, and he offered a reward of $100 for the recovery of the harness and the conviction of the thief. A few days afterward a boy named Wilt found part of the harness in appellee's berry patch, and appellant went with appellee to the place and brought that part of the harness into appellee's blacksmith shop. Appellant gave the boy who had found the harness a quarter of a dollar, and said he would give him a dollar to find the rest of it. Appellee claims that appellant at that time offered a reward of $100 to the one who would find out who the thief was, and that he earned the reward. 'This suit was brought to recover the amount so claimed as a reward, and a trial resulted in a verdict and judgment for appellee for $100.

The evidence showed that the defendant was much excited on the occasion, when it is claimed that the offer was made in the shop. Plaintiff's version of the language used was that defendant said, "I will give $100 to any man who will find out who the thief is, and I will give a lawyer $100 for prosecuting him," using rough language and epithets concerning the thief. There was evidence of substantial repetitions of the statement, together with the assertion that he would not have a second-class lawyer, either, and that he would not hire a cheap lawyer, but a good lawyer. The harness had been taken by a man called Red John Smith, who had been adjudged insane, and a Mrs. Phillips told the plaintiff that she saw Smith walking by with the harness on his back, on Sunday morning, which was the time when it was taken. Plaintiff watched Smith that night and saw him hiding the collars, and the next day he waited for the return of the defendant from Galesburg, and told him that Red John Smith had the harness. A search warrant was procured, and the remainder of the harness was found.

We do not think that the language used was such as, under the circumstances, would show an intention to contract to pay a reward, and think plaintiff had no right to regard it as such. Defendant had previously offered a very liberal reward for the return of the old harness and the

Higgins v. Lessig.

conviction of the thief. On this occasion he paid the boy only a trifling sum, and offered only $1 for finding the rest of the property. His further language was in the nature of an explosion of wrath against some supposed thief who had stolen the harness, and was coupled with boasting and bluster about the prosecution of the thief. It was indicative of a state of excitement so out of proportion to the supposed cause of it, that it should be regarded rather as the extravagant exclamation of an excited man than as manifesting an intention to contract.

But if we concede that defendant's language indicated an intention to pay a reward, the plaintiff, although he obtained definite knowledge by watching Smith, was neither the discoverer nor the first informer as to the identity of the thief. The evidence was that other persons learned of facts which showed that Red John Smith had taken the harness, and told the defendant of such facts before the plaintiff did. Charles Wilt testified that, on Thursday morning, his wife got up about four o'clock and called him, and he saw a man going along with a cane. It was dark, and the man had part of a harness. The man was limping, and the witness knew him to be Smith. Wilt informed defendant the same day and that was the day that Wilt's son found part of the harness in the berry patch. There was evidence that Smith was suspected by others who told defendant of their suspicions, but while they were not founded on definite knowledge, the information of Charles Wilt was of that character. Defendant testified that Wilt told him on Thursday or Friday who had the harness, and that Smith had been seen with it. Defendant had gone to Galesburg earlier in the week to see the police about the taking of the harness. After receiving information that Smith had been seen with the harness, he went again to Galesburg on Saturday, before plaintiff told him anything about Smith. Both he and a policeman testified that he informed the policeman that he had found part of the harness, and thought that Red John Smith had the balance, and that the police should not do anything

further about it.   This testimony was stricken out by the
court.   It was competent for the purpose of showing that
defendant had information before the plaintiff gave him
any.   The court also sustained objections to questions as
to what Wilt told the defendant about Smith having the
harness.   The questions were competent to prove that
plaintiff did not first gain or impart information, showing
that Smith took the harness, but the fact was proved
otherwise, and the ruling did no harm.

The first instruction for plaintiff was erroneous in direct-
ing a verdict for plaintiff if he discovered who stole the
harness and informed defendant, without requiring that he
should have been the first person who found out facts lead-
ing to the discovery of the person who took the harness, or
the first who communicated such facts to defendant.   Under
this instruction he could recover, although the facts were
first obtained by others, and the defendant was first fully
informed of them by others.   The judgment will be re-
versed and the cause remanded.