(No. 45789.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. THOMAS A. GOKEY, Appellant.

*Opinion filed May 29, 1974.—Rehearing denied June 28, 1974.*

Richard H. Devine, of Chicago, for appellant.

William J. Scott, Attorney General, of Springfield, and William J. Cowlin, State's Attorney, of Woodstock (James B. Zagel and Nolan Lipsky, Assistant Attorneys General, of counsel), for the People.

MR. JUSTICE WARD delivered the opinion of the court:

Thomas Gokey was found guilty by a jury in the circuit court of McHenry County of reckless driving, unlawful use of weapons and bribery, and was given concurrent sentences of 90 days on the reckless-driving conviction, one year on the unlawful-use-of-weapons conviction, and two to five years on the conviction of bribery.

On the defendant's appeal to the appellate court the People confessed error as to the reckless-driving conviction, and that conviction was reversed. The appellate court affirmed the other two convictions, but it reduced the sentence for bribery to a term of one to three years. (9 Ill. App. 3d 675.) We granted leave to appeal.

On April 8, 1969, an auto traveling at a high rate of speed passed the squad car of George Meyers and Edgar Fair, deputy sheriffs of McHenry County. The officers "curbed" the offending car and as Officer Meyers walked to the car he recognized the driver as Thomas Gokey, a Woodstock-area resident whom he had known for over 30 years. As there was "little traffic on the road" the officer let the defendant off with a warning. However, after pulling away the defendant again drove at a high speed and passed a car in a no-passing area. He was again pulled over and Officer Meyers told Gokey he was going to be booked for passing a car in a no-passing zone. He ordered Gokey to get out of his car, and as the defendant did so, a pistol fell at his feet.

Sergeant Matt Schalz testified that when the defendant was brought into the police station, he said, "Matt, you are not going to let them put me in jail, are you?" Schalz replied, "Sorry, Tom, I can't help you." Gokey then said, "I will give you 50 bucks—just don't lock me up." Schalz said, "I can't do you any good; come on, let's go." The officers then took Gokey downstairs to a squad room and there Gokey said, "Well, if $50.00 isn't enough, how about $500.00." When Sergeant Schalz answered, "I don't want your money, Tom, I can't do anything for you," Gokey then said, "How about $5,000.00?" When Schalz ignored this the defendant said, "Here, take the whole God damn thing," and he threw a roll of money on the table. There was $7,200 in the roll. These statements to Schalz were made in the presence of officers Meyers, Fair, Borgeson and Connelly.

The defendant testified he was a diabetic and that his

physician had given him insulin on the morning of April 7. He also administered insulin to himself that afternoon, he said. He did not feel well that day and had not eaten when he drove from Woodstock to a hotel in Chicago early on the evening of April 7 to borrow $7,000 from his father for a business venture.

As he was hungry, the defendant testified, he stopped at a restaurant in Crystal Lake on his way home, but the restaurant was closed. He said he began to perspire and experience chills. He slept in his automobile for a while, but did not feel any better when he awoke. He vaguely remembered the officers stopping him on both occasions, he said. He did not recall the circumstances of his arrest or how he acted and could not recall being taken to the sheriff's office or what had occurred there. He testified that because he was going to pick up a large sum of money he had brought his gun and placed it on the floor of the car.

Dr. John C. Paul testified in behalf of the defendant that in his opinion Gokey was suffering from insulin intoxication or insulin shock at the time of the incidents. On cross-examination he testified that he had not given Gokey an injection of insulin on the morning of April 7.

Dr. Robert Stein, another medical doctor, testified in behalf of the People. Responding to a hypothetical question, Dr. Stein said that in his opinion the defendant's actions here were not consistent with an insulin reaction.

We cannot consider the defendant's contention that the trial court erred when it denied his motion for a directed verdict at the close of the People's case. "In both criminal and civil cases a defendant waives his right to a directed verdict when he introduces evidence after his motion has been denied." *People ex rel. Kubala v. Woods,* 52 Ill.2d 48, 54; *People v. Washington,* 23 Ill.2d 546, 548. Here of course, the defendant introduced evidence after the denial of his motion.

Another contention is that the prosecution did not establish the offense of unlawful use of weapons because it

failed to prove a concealment under the statute. The statute (Ill. Rev. Stat. 1967, ch. 38, par. 24—1(a)) provides in part:

"(a) A person commits the offense of unlawful use of weapons when he knowingly:

\* \* \*

(4) carries \*\*\* concealed \*\*\* on or about his person \*\*\* any pistol, revolver or other firearm."

This court in *People v. Euctice,* 371 Ill. 159, considered the meaning of "concealed." In that case the automobile in which the two defendants were riding as passengers in the back seat was stopped at a road block by State troopers. As the troopers approached the car they saw one defendant drop a pistol, which was held between his legs, to the floor of the car, and saw the other defendant kick a weapon under the rear seat. Affirming the defendants' convictions for carrying concealed weapons the court stated: "The statute does not mean that the firearm shall be carried in such a manner as to give absolutely no notice of its presence. It merely requires that the firearm shall be concealed from ordinary observation. In this case the court was warranted in finding defendants had been concealing their guns on or about their persons, and that, by dropping them to the floor and kicking them under the rear seat, they were further endeavoring to conceal them." *People v. Euctice,* 371 Ill. 159, 162.

In *People v. Ostrand,* 35 Ill.2d 520, 533, a conviction of unlawful use of weapons was affirmed. This court said: "As to the unlawful-use-of-weapons charge, defendant argues that the elements of concealment and accessibility have not been sufficiently established. Officer Novak testified that he observed a pistol, subsequently shown to have been loaded, fall from defendant's trouser leg during the course of the arrest. This testimony, if credible, and the jury apparently thought it was, is more than sufficient to establish the requisite elements of concealment and accessibility. See *People v. Russell,* 20 Ill.2d 344, adopting

the opinion of the appellate court, *People v. Russell,* 23 Ill. App. 2d 13."

Here Officer Meyers testified that after stopping the defendant the second time, "As [Gokey] stepped out and stood alongside his car, a gun came out of his clothing somewhere, *** and it landed right by his feet." Officer Fair testified that, "As Mr. Gokey stood up, an automatic pistol dropped on the ground near his feet. *** I heard a clink on the ground, I looked down and part of the gun was on his shoe." When asked to demonstrate where the gun was in relation to the defendant's person when he first saw it, the witness indicated that the weapon was on the defendant's shoe "partially covered by the pants as it fell down."

Here, as in *Ostrand,* the gun fell from the defendant's trouser leg. The element of concealment was adequately proved. *People v. Euctice,* 371 Ill. 159, *People v. Ostrand,* 35 Ill.2d 520, 533.

We have concluded that the defendant's conviction of bribery cannot stand. It is of course the function of the trier of fact to determine factual questions and to assess the credibility of witnesses, but where the evidence leaves a reasonable doubt as to the guilt of the accused, we will set aside a conviction. *People v. Dawson,* 22 Ill.2d 260, 264-265.

Bribery under the statute requires that the accused have had an intent to influence the performance of an act related to the employment of a public officer or employee. The indictment charged that the defendant intended to influence Sergeant Schalz in the performance of his duties as a deputy sheriff and with that intent tendered him $5,000. (How the grand jury settled on $5,000 rather than $50, $500 or $7,200 cannot, of course, be explained.) The prosecution's evidence did not prove a corrupt intent to influence the sergeant. The defendant said to him: "Matt, you are not going to let them put me in jail, are you? *** I will give you 50 bucks, just don't lock me up. *** Well, if $50.00 isn't enough, how about $500.00? *** How about

$5,000.00? *** Here, take the whole God damn thing" (pulling $7,200 from his pocket and throwing it on the table).

Strangely, if this were to be considered as an offer of a bribe, the statements to Schalz were made in the presence of four other police officers, two of whom were the arresting officers. The amount of the claimed "bribe" increased from $50 to $7,200, more than 100 times, in the course of a minute or so. We judge the defendant's language may have been language of anger and exasperation, or of bravado or language prompted by alcohol or by some medical cause, but, considering the circumstances, it was hardly language seriously proposing criminal conduct. It may be analogized to those extravagant proposals which are not to be regarded as offers to enter into a contract. *Higgins v. Lessig,* 49 Ill. App. 459; Restatement (Second) of Contracts, secs. 19-21 (1973).

We would note that the incident was not even mentioned by Sergeant Schalz in his report, which indicates the impression which was conveyed by the defendant's conduct.

We judge the defendant's motion to reduce sentence, applicable now only to the unlawful-use-of-weapons conviction, must be allowed.

The defendant explained that he had the gun because of the large amount of currency he would have in his possession. Nothing appears in the record to contradict this explanation. Considering the explanation, and considering typical sentences which have been imposed for this offense under more aggravated circumstances, the sentence should be and it is accordingly reduced to three months.

For the reasons given, the judgment of the appellate court is reversed as to the bribery conviction, and affirmed as to the use-of-weapons conviction. The sentence on the latter conviction is reduced to three months.

*Reversed in part and*
*modified and affirmed in part.*