THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* JAMES R. REESE, Defendant-Appellant.

(Nos. 56626, 56627 cons.;

First District (1st Division)—August 19, 1974.

Roger S. Matelski, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Kenneth L. Gillis and Lee T. Hettinger, Assistant State's Attorneys, of counsel), for the People.

Mr. PRESIDING JUSTICE EGAN delivered the opinion of the court:

The defendant, James Reese, was found guilty following a bench trial of unlawful use of weapons and theft; and sentenced to 6 months in the House of Correction for unlawful use of weapons and 60 days for theft. Three other men tried with him, Gregory Mims, Larry Martin, and Leroy Beckley, were found not guilty.

On June 3, 1971, at 12:40 A.M., Chicago Police Officers Hernandez and Keto were assigned to the subway "decoy" detail. Keto was sitting on the ground leaning against a pillar underneath a stairway with his eyes closed, feigning sleep. Hernandez was behind the door under the stairwell and was able to observe Keto through a vent in the door. He saw Martin and Mims walk by Keto, look at him and walk away. A few minutes later they walked back; Martin walked over to Keto and looked down at him. Mims grabbed Martin by the arm and they walked away. Martin walked over to the door behind which Hernandez stood,

looked in and then walked to the side where Hernandez could not see him. Hernandez testified that a few minutes later Reese walked up to Keto, reached into his sweater pocket, pulled out his wallet, reached toward the wrist watch on Keto's left hand and started to pull it off. At that time Hernandez could not see Martin or Mims from inside the doorway. He saw Keto jump up and Reese, Mims and Martin begin to run. He testified that Reese dropped the watch and wallet by the pillar where Keto was sitting. Keto caught Reese from behind and they began to struggle. At that time he saw Keto grab Reese's hand which had a gun in it. Keto took the gun from Reese and handed it to Hernandez. Reese said: "Please give me a break, I didn't do anything, give me a pass, I have a wife and family."

Keto testified that he was wearing a wrist watch and had a leather wallet containing $2 in his right front sweater pocket. He was wearing a trench coat which was open. When he felt someone tug at his sweater pocket and pull at his watch, he jumped up, announced that he was a police officer and saw the defendant jump back startled. The defendant then dropped the wallet and the watch which he had ripped from Keto's wrist, breaking the chain. Keto ran after Reese, grabbed him and ordered him to put his hands up against the wall. Reese began to struggle and Keto got one cuff on him. While he was struggling to get the defendant's hands back, a barrel of a gun came up in Reese's left hand, which had the handcuff on it. As the weapon came up, it clicked once. The gun was pointed toward Hernandez, who was covering Martin, Mims and Beckley. A 38-caliber revolver, which the officers testified was the one taken from the defendant, was received into evidence. It had four live shells and one expended shell in the cylinder.

The defendant testified that he worked at the Main Post Office and got off work that night at midnight. He went to the El station on Clinton and caught the West Side El to Jackson and State. When he approached the platform he began to walk to the southbound side to catch the train. As he got under the escalator steps, he saw Keto sitting on the floor, lying against the post. His face looked wet as though he had been beaten up, and he was moaning. Reese went over and tapped him on the shoulder. Keto jumped up, and the defendant jumped back and started to walk away. As he turned his back, Keto jumped up and began to swing at him. The defendant took a couple of steps back, and the other officers came upon him with drawn pistols. He immediately moved against the pillar and put his hands against the wall, facing all four police officers. They began to search him, and he pulled out his post office badge and handed it to one of the officers. When told to turn around to be handcuffed, he told them he did not do anything. They

said if he did not turn around they would spray him with mace. He again denied doing anything, and they sprayed him with mace. Keto hit him with the side of a weapon that he had in his hand. The defendant's shirt was pulled over the top of his head, and he was dragged to where the other men were. He was struck about four times. He was semi-conscious, and as he was beginning to come to they stomped his hand on the concrete floor. He denied running from Keto but stated that he merely backed up against the wall. He denied touching Keto's left wrist or reaching into his pocket. After he was brought to the other men who were under arrest, he was lifted from the ground and hand-cuffed. The officers then said: "Oh, you are carrying a pistol." He denied having any weapon, resisting the officers or having any cartridges for a weapon.

Martin and Mims testified that they had never seen the defendant before this occurrence. Beckley worked at the post office and had known the defendant for about 2 months. All three testified that they saw Reese on the ground with the officers and that they never saw a gun in his hand.

■■ The defendant first contends that the record is devoid of any evidence that he carried a weapon concealed on or about his person. Hernandez testified that he observed the defendant walk up to Officer Keto and at that time he did not have anything in his hands. As the defendant fled, Hernandez still did not observe anything in his hands. It was not until the defendant and Keto began to struggle that Hernandez observed the gun in his hand but he did not know where it came from. Keto testified that the first time he saw the weapon was when he was struggling to get the defendant's hands behind his back. It is a reasonable inference that the weapon had been concealed before the officers first saw it. (See *People v. Gokey*, 57 Ill.2d 433, 436, 312 N.E.2d 637; *People v. Davis*, 3 Ill.App.3d 56, 278 N.E.2d 200.) In both cases cited by the defendant, *People v. Crachy*, 131 Ill.App.2d 402, 268 N.E.2d 467, and *People v. Gant*, 84 Ill.App.2d 208, 228 N.E.2d 582, convictions for unlawful use of weapons were reversed because the weapons were visible and clearly identifiable as such from the first moment the officers observed the defendants.

The defendant next contends that his guilt was not proved beyond a reasonable doubt. In addition to his own testimony and that of his three other witnesses, he points to improbabilities in the State's evidence. He argues that, since Keto was wearing a trench coat, the defendant could not have known that he was wearing a watch. Keto testified that the watchband chain was broken when the defendant pulled the watch off but that it had been repaired. He was wearing the same watchband at

the trial and the defendant's attorney, during Keto's cross-examination, said: "Will you just raise your arm, I want the court to see—this is the same wrist watch and to notice the lack of any room under that watch." What the defendant could or could not see Keto wearing is pure speculation; and the record is insufficient for us to determine what is meant by a "lack of room" under the watch. The purpose of all watchbands is to keep the watch from slipping up or down. So far as we can tell the band may have been expandable. Consequently, we see no reason to substitute our judgment for that of the trial court who had the benefit of observing the watch and band while Keto wore it.

There are some inconsistencies between the defendant's testimony and his three witnesses. He testified that he was struck and maced by the officers and that some of his witnesses were present. All of them denied seeing him struck or maced. The credibility of the witnesses was for the trial judge, and he apparently believed the officers, who, if the defendant's testimony is true, concocted a perjurious story out of the whole cloth. The conclusion that the officers did so is unrealistic, as is the defendant's story that he placed his hands on Keto because Keto's "face looked wet, like he had been beaten up or something and he was kind of moaning."

■■ The defendant's final contention is that the sentences are excessive. While some confusion existed in the record, it is conceded by the State in its brief that the sentences must be considered to run concurrently. Both crimes for which the defendant was convicted are now Class A misdemeanors punishable by imprisonment for any term of less than 1 year. The defendant had previously been convicted of unlawful use of weapons and had been fined. Taking into consideration his past conviction and the facts of this case, we cannot say that the trial judge abused his discretion in sentencing. The judgment of the circuit court is affirmed.

Judgment affirmed.

GOLDBERG and HALLETT, JJ., concur.