THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
STANLEY RODGERS, Defendant-Appellant.

First District (3rd Division)    No. 76-843

Opinion filed March 1, 1978.

John Latimer Edward, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Lee T. Hettinger, Joan S. Cherry, and Pamela L. Gray, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE SIMON delivered the opinion of the court:

After a bench trial, defendant was convicted of armed robbery and sentenced to 4 to 12 years. Defendant admits he was present when the robbery was committed. He contends, however, that the evidence adduced at trial proves him to be neither a principal nor accountable for the acts of the actual perpetrator of the robbery.

The State relied on the testimony of the two victims, Peter Loughran and James Fryzyna. Both testified that one night at 12:15 a.m., they were walking in Chicago to a friend's house. Loughran testified that as they approached a corner, he noticed two men underneath the trunk of an automobile. Fryzyna stated that he observed the two men behind the car.

Loughran and Fryzyna both testified that when they reached the corner, the two men, one of whom was carrying a rifle, approached them and demanded several times that they "get down" behind the bushes. When the victims hesitated, both were struck in the head with the rifle.

Loughran testified that defendant then made repeated demands for Loughran's money. When Loughran gave defendant a dollar bill and some change, defendant began searching Loughran's pockets to see if he had more money. At the same time, the assailant with the rifle was going through Fryzyna's pockets, looking for money. The victims testified that during the search both assailants threatened to shoot the victims.

Following the search, defendant instructed Loughran to remove the leather jacket Loughran was wearing. As Loughran began to unbutton the jacket, defendant ripped it from his back and pushed Loughran down. Defendant then kicked Loughran in the eye, and the defendant drove away with the other assailant.

Loughran was asked by the defense counsel whether Loughran gave the following answer to a question asked before the grand jury:

"Question: Were they inside the car?

Answer: They were inside the car laying on the back so we couldn't see their faces. One had a shotgun, or a regular rifle, I can't tell the difference really and he told us to get down."

Although Loughran could not recall whether this statement was made before the grand jury, the defense counsel and the State's Attorney stipulated that the above exchange took place.

Defendant's explanation was that on the night in question he was riding in the front passenger seat of a car with Greg Owens, the driver, and Larry Cross. Three or four cars approached the one in which defendant was riding, and their occupants began cursing and shouting at the three men in Owens' car. Owens turned onto a side street and stopped the car. Cross got out and opened the trunk. When defendant heard Cross shouting and saw Cross holding a gun on two men standing on the corner, defendant stepped out of the car and asked Cross, "Hey man, what is on your mind?" After telling defendant to "shut up," Cross proceeded to rob the victims of their money. Cross then ordered Loughran to remove the jacket Loughran was wearing. When Loughran hesitated, Cross struck him on the head. Loughran removed the jacket and threw it at defendant, whereupon Cross grabbed the jacket and put it across his arm.

Defendant further testified that he did not take money or a jacket from either victim. He stated that he did not know Cross well, was not aware of Cross's intentions to commit robbery, and did not know the weapon was in the car. Defendant also testified on cross-examination that after the incident Owens drove him to his own neighborhood and parked the car there. Defendant then walked home, but did not tell his parents or the police about the incident.

Defendant raises the following issues: (1) whether he was proved guilty of armed robbery; (2) whether the trial court properly denied his motion for a directed verdict on the armed robbery charge; (3) whether the discrepancy between the victim's name in the indictment and in the report of proceedings denied him a fair trial; (4) whether defendant was deprived of a fair trial by his retained trial counsel's incompetence; and (5) whether the trial court committed errors which subject defendant to the possibility of double jeopardy.

■■ As to defendant's first contention, a person is legally accountable for the conduct of another when:

"Either before or during the commission of an offense, and with the intent to promote or facilitate such commission, he solicits, aids, abets, agrees or attempts to aid, such other person in the

planning or commission of the offense * * *." (Ill. Rev. Stat. 1975, ch. 38, par. 5—2(c).)

Although mere presence at the scene of a crime does not render a person accountable for the acts of another (*People v. Nugara* (1968), 39 Ill. 2d 482, 487, 236 N.E.2d 693), evidence of conduct showing a design on the part of the accused to aid in a crime renders the accused accountable for the other perpetrators' actions. *People v. Kessler* (1974), 57 Ill. 2d 493, 497, 315 N.E.2d 29.

■■ Here, sufficient evidence existed to support the finding that defendant was legally accountable for the armed robbery. The victims' testimony establishes that the defendant actively aided the other assailant rather than being an innocent bystander. Even though defendant offered an exculpatory account of the incident, this presented only an issue of credibility for the trial judge, who saw and heard the witnesses. Weighing the issue of credibility and determining matters of fact was within his province as trier of fact. *People v. Spagnolia* (1961), 21 Ill. 2d 455, 458, 173 N.E.2d 431.

■■ Relying on the discrepancy between Loughran's testimony that the assailants came from underneath the car and Fryzyna's statement that the assailants were behind the car, defendant argues that the testimony of Loughran and Fryzyna is not credible. Defendant also points at the difference between Loughran's grand jury testimony that the assailants were waiting inside the car lying out of sight in the back seat and his trial testimony that placed them underneath the car. These variations in testimony were for the trier of fact to weigh in his deliberations, and do not destroy the credibility of the State's two eyewitnesses. *People v. Bell* (1972), 53 Ill. 2d 122, 125-126, 290 N.E.2d 214; *People v. Ganter* (1977), 56 Ill. App. 3d 316, 371 N.E.2d 1072.

■■ Defendant further claims that the circuit court erred by failing to grant his motion for a directed verdict. After the denial of this motion, defendant testified on his own behalf, thus waiving his motion for a directed verdict by introducing evidence after the motion was denied. (*People v. Gokey* (1974), 57 Ill. 2d 433, 312 N.E.2d 637.) In addition, there was sufficient evidence of defendant's participation in the crime to justify denying this motion.

The defendant's next contention is that the discrepancy between the complainant's name in the indictment, James "Kruzyna" and the name of the State's witness appearing in the transcript, James "Fryzyna" denied him due process of law. Defendant contends that this discrepancy made it impossible for him to prepare a defense against the actual victim, Fryzyna.

When attacked for the first time on appeal, an information or

indictment will be upheld as sufficient if it informed the accused with sufficient specificity to prepare his trial defense, and allows him to plead a resulting conviction as a bar to a future prosecution arising out of the same conduct. (*People v. Gilmore* (1976), 63 Ill. 2d 23, 29, 344 N.E.2d 456.) A variation in the name of a victim is immaterial unless it substantially injures the accused. *People v. Nesbitt* (1961), 21 Ill. 2d 487, 488, 173 N.E.2d 447; *People v. Nelson* (1959), 17 Ill. 2d 509, 162 N.E.2d 390.

Defendant has not shown that the variance caused him any substantial injury. The record indicates that on the day of the crime, the State filed a preliminary complaint charging defendant with armed robbery. The complainant's name and signature appeared on the document as James "Fruzyna." This is very similar to the spelling of the witness's name in the transcript—James "Fryzyna." When the defendant was indicted, the victim's last name appeared in the indictment as "Kruzyna," a misspelling. In the State's answer to defendant's motion for discovery, the names "James Frizyka" appeared on the list of witnesses with the address 922 North LeClaire. At trial, Fryzyna gave the same address, and defense counsel made no objection to the discrepancy, though he extensively cross-examined Fryzyna.

■■ Whatever the precise spelling of this witness's name, defendant was advised at all times of the witness's address, and so should have been able to prepare a defense against him. Further, the identity of the address demonstrates that the victim named in the indictment and the person who testified at trial are the same, so that defendant can plead his conviction as a bar to any future prosecution on the same facts.

Defendant next claims that he was prejudiced by his trial counsel's incompetence. Where a defendant has been prejudiced by the acts or omissions of his counsel's inadequate representation, the defendant may be entitled to a new trial. (*People v. Witherspoon* (1973), 55 Ill. 2d 18, 21, 302 N.E.2d 3.) However, it is well-settled that review of a retained counsel's competence does not extend to those areas involving the exercise of judgment, discretion and trial tactics (*Witherspoon; People v. Baer* (1976), 35 Ill. App. 3d 391, 399-400, 342 N.E.2d 177), and because another attorney in the better light of hindsight may have handled the trial differently is not an indication of the trial counsel's incompetence. (*Baer*, at 400.) The defendant must clearly establish actual incompetence of counsel and substantial resultant prejudice which would have changed the trial's outcome. *Witherspoon; Baer.*

Defendant contends that five episodes in the trial demonstrated the incompetence of his trial counsel. First, he argues that his trial counsel's failure to act upon the discrepancy between the victim's name in the

indictment and the witness's name in the transcript prejudiced defendant. We have already concluded, as set forth above, that no prejudice resulted to defendant because of this variance.

The defendant's next complaint about his counsel relates to the direct testimony of Peter Loughran, and involves the following leading question asked by the State's Attorney:

"A. * * * we noticed there was a white Ford there, with two men underneath the trunk—under the chassis of the car.

Q. In front, or the rear of the car?

A. The rear of the car, laying on the ground by the curb, as they were trying to fix it, or trying to conceal themselves, you know.

Mr. Levy [defense counsel]: Objection, to that, your Honor.

The Court: The last portion will be stricken."

Pursuant to defense counsel's general objection, the part of the answer damaging to defendant—"trying to conceal themselves"—was stricken. Defendant contends that his trial counsel should have moved to strike the entire answer because the original question was leading. Although this was a leading question, defendant's trial counsel's failure to move to strike the entire answer did not prejudice defendant.

The third error defendant attributes to his counsel was his failure to "follow through on an objection" to Loughran's testimony concerning photographs he viewed at a police station. Loughran testified that the police showed him several photographs and asked him to determine if any of them was a photograph of the person who had taken his money. The following exchange then occurred:

"Q. Did you pick out any?

A. Yes.

Mr. Levy [defense counsel]: I object to that. He showed him the photographs and he was asked, if he picked out any.

The Court: Subject to being connected up, I will let it stand."

Defendant contends that the testimony was not "connected up" and that he was prejudiced by his counsel's failure to bring this to the attention of the trial judge.

Illinois courts adhere to the rule that, absent some indication to the contrary in the record, a trial judge at a bench trial is presumed to have considered only competent evidence. (*People v. Clarke* (1971), 50 Ill. 2d 104, 277 N.E.2d 866.) This rule presumes a trial judge will decide factual issues based only on legally relevant and competent evidence introduced at trial, and will not permit irrelevent material to influence his determination. (*People v. Glanton* (1975), 33 Ill. App. 3d 124, 145, 338 N.E.2d 30.) Defendant has not pointed to anything in the record rebutting this presumption. In fact, the trial judge himself declared that he would

consider the testimony only if it were later "connected up" by the State's Attorney. This indicates that defendant was not prejudiced by his trial counsel's failure to reinstate the objection.

■■■ Defendant also contends his defense counsel should have read into the record at trial the questions and answers given by Loughran at the grand jury proceeding which contradicted his testimony at trial with respect to where defendant was when Loughran approached the automobile. Prior inconsistent statements are used to discredit a witness, and are not affirmative evidence on the merits of a case. Thus, when the parties stipulated that the questions were asked and answers given by Loughran at the grand jury proceedings, defense counsel's impeachment of Loughran was complete and there was no need to read the questions and answers into evidence. Further, it would not have been in defendant's best interest to have this material admitted into evidence because the answers indicated that defendant was hiding with the other assailant in the back of the car. This evidence only could have implicated defendant, rather than helped absolve him of guilt.

■■ Defendant's final allegation of incompetence is that his defense counsel erred by not making a closing argument. It is not clear that an argument was not made here. The report of proceedings presented to this court does not contain final arguments by either party. But the memorandum of orders ("half-sheet") indicates that closing arguments were heard, and at the sentencing hearing, defense counsel stated in mitigation: "* * * [Y]ou have heard my final argument in which I pointed out that at best the participation, so-called, of this young man in this incident was minimal." Even if his defense counsel did not make a closing argument, defendant has failed to demonstrate how this prejudiced him; because the trial was short and the court heard the evidence, there may have been no need for closing argument. In the absence of evidence of prejudice, the scope of our review on the issue of incompetence does not extend to the defense counsel's tactical decision to forego a closing argument, assuming he made such decision. *Baer.*

Defendant's last contention is that the trial judge denied defendant his right to due process of law when he allegedly failed to enter defendant's name upon the "half-sheet" in the case; allegedly failed to enter judgment against defendant on the findings; and allegedly failed to enter the names of the robbery victims as part of his findings. Defendant claims these errors subject him to the possibility of being prosecuted twice for the same offense.

Even a casual examination of the "half-sheet" indicates that defendant's name, Stanley K. Rodgers, and his indictment number are clearly written at the top of the "half-sheet."

Defendant's other contentions are equally infirm. This statement by the trial judge in the record leaves no doubt that the trial judge found defendant guilty of the robbery:

"The Court: I have listened to the testimony very carefully and the court is of the opinion that the defendant Stanley Rodgers did participate in the robbery here, and the court finds you guilty on that charge."

Following this, several pages of record contain the sentencing hearing of defendant, and the trial judge's pronouncement of a sentence. The victims' names and addresses are found throughout the record, which is replete with references to the date, time and location of the offense. The record will provide defendant with a complete bar to any future prosecution on the same facts.

Judgment affirmed.

JIGANTI, P. J., and McGILLICUDDY, J., concur.