THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, *v.*
LESTER KLEFFMAN, Defendant-Appellee.

Third District    No. 79-399

Opinion filed November 6, 1980.

Bruce W. Black, State's Attorney, of Pekin (John X. Breslin, of State's Attorneys Appellate Service Commission, of counsel), for the People.

Harry H. Sonnemaker, Jr., and Michael W. Sonnemaker, both of Peoria, for appellee.

Mr. JUSTICE STENGEL delivered the opinion of the court:

The State appeals from an order which dismissed an indictment charging defendant Lester Kleffman with official misconduct under section 33—3(c) of the Criminal Code of 1961 (Ill. Rev. Stat. 1979, ch. 38, par. 33—3(c)). That section provides:

"Official Misconduct. A public officer or employee commits misconduct when, in his official capacity, he commits any of the following acts: * * * (c) With intent to obtain a personal advantage for himself or another, he performs an act in excess of his lawful authority * * *."

The indictment alleged that on May 5, 1978, defendant committed official misconduct in that he:

"* * * in his capacity as a public officer or employee, to-wit: Mayor of Marquette Heights, Illinois, with intent to obtain a personal advantage for himself, performed an act in excess of his lawful authority, in that he purchased a confiscated weapon held pursuant to law by the Marquette Heights Police Department * * *."

The trial court dismissed the charge on the grounds that section 33—3(c) is unconstitutionally overbroad and vague, and that the indictment failed to allege the elements of the offense with sufficient specificity. We reverse and remand for further proceedings.

The parties agree that the doctrine of overbreadth is based on substantive due process. At issue is whether the language of the statute is so broad that it is applicable to constitutionally protected conduct. See *Village of Schaumburg v. Citizens for a Better Environment* (1980), 444 U.S 620, 63 L. Ed. 2d 73, 100 S. Ct. 826, where the Supreme Court held a village ordinance regulating solicitation of contributions by charitable organizations was drawn so broadly that it unnecessarily interfered with freedom of speech.

In the case at bar the trial court's order concluded that section 33— 3(c) "is overly broad in its application, requiring no mental state which would limit its scope to violations which are knowingly or inherently criminal." Similarly, defendant takes the position that the

statute is overbroad because it creates an absolute liability offense applicable to conduct not inherently criminal. We find defendant's argument misconceived. To be sure, an analysis of the statute reveals that the language includes only one mental state, *i.e.*, the intent to obtain a personal advantage for himself or another. Knowledge on the part of the officer that he is acting in his official capacity, or that the act was in excess of his lawful authority, is not included. However, the absence of mental states with respect to those elements of the offense would not render the statute overbroad. Defendant does not argue, and we do not decide, whether such mental states should be implied as a matter of statutory construction. (See *People v. Nunn* (1979), 77 Ill. 2d 243, 396 N.E.2d 27.) Section 33—3(c) does not purport to regulate speech, press, or any other constitutionally protected right. Moreover, the requirement that the act be in excess of the lawful authority of the public officer or employee renders the statute inapplicable to constitutionally protected conduct. The doctrine of overbreadth simply has no significance to the instant case.

■■ ■ We next consider whether section 33—3(c) is unconstitutionally vague. As stated in *United States v. Harriss* (1954), 347 U.S. 612, 617, 98 L. Ed. 989, 996, 74 S. Ct. 808, 812:

> "The constitutional requirement of definiteness is violated by a criminal statute that fails to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden by the statute."

The statute must not be so vague that persons of common intelligence must necessarily guess at its meaning and differ as to its application. (*Lanzetta v. New Jersey* (1939), 306 U.S. 451, 83 L. Ed. 888, 59 S. Ct. 618.) However, impossible standards of specificity are not required, and in determining whether a statute meets due process requirements a court should consider not only the language of the statute, but also the legislative purpose. (*People v. Lewis* (1979), 73 Ill. App. 3d 361, 386 N.E.2d 910.) Judicial interpretations of the statute must also be considered. *Beauharnais v. Illinois* (1952), 343 U.S. 250, 96 L. Ed. 919, 72 S. Ct. 725.

Defendant maintains that the terms "in his official capacity," "in excess of his lawful authority," and "personal advantage," do not give fair notice of the prohibited conduct. We disagree.

The term "in his official capacity" has been construed by Illinois courts. An act is performed in one's official capacity if it is accomplished by exploitation of his position as a public officer or employee. (*People v. Steinmann* (1978), 57 Ill. App. 3d 887, 373 N.E.2d 757.) As so construed, the term sufficiently delimits the scope of the statute.

We next consider the term "in excess of his lawful authority." In *Hygrade Provision Co. v. Sherman* (1925), 266 U.S. 497, 498, 69 L. Ed. 402, 406, 45 S. Ct. 141, the Supreme Court upheld a New York statute

making it a misdemeanor, *inter alia*, to sell meat falsely represented "to be kosher, or as having been prepared under * * * the orthodox Hebrew religious requirements" with intent to defraud. The parties seeking to enjoin enforcement of the statute argued that the terms "kosher" and "orthodox Hebrew religious requirements" were unconstitutionally vague. The court responded:

> "[T]he evidence, while conflicting, warrants the conclusion that the term 'kosher' has a meaning well enough defined to enable one engaged in the trade to correctly apply it; at least, as a general thing. If exceptional cases may sometimes arise where opinions might differ, that is no more than is likely to occur, and does occur, in respect of many criminal statutes either upheld against attack or never assailed as indefinite." (266 U.S. 497, 502, 69 L. Ed. 402, 407, 45 S. Ct. 141.)

The term "lawful authority," like the terms "kosher" and "orthodox Hebrew religious requirements," derives its meaning from a set of rules not contained in the statute. This court is not prepared to hold that the lawful authority of the public officers and employees of this State is so poorly defined that, as a general thing, public officials are unable to determine the propriety of their actions. As in *Hygrade Provision Co.*, the fact that exceptional cases may arise where opinions might differ does not render section 33—3(c) unconstitutional.

The term "personal advantage" must be evaluated in light of the legislative purpose in enacting section 33—3(c). It has been held that the offense of official misconduct was designed to reach those situations where a public officer or employee has in some fashion exploited his official position to the detriment of the public good. (*Steinmann.*) "Personal advantage" in this context means an advantage to a particular person as opposed to the public the officer or employee serves. Again, as a general rule, public officers or employees should be able to determine whether they are acting in the public interest or the interest of a particular person. In conclusion, section 33—3(c) provides fair notice of prohibited conduct and satisfies constitutional requirements.

■■ Finally, we consider the sufficiency of the indictment. At the outset we note that since it was challenged in a pretrial motion to dismiss, the indictment must comply with section 111—3(a) of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1979, ch. 38, par. 111—3(a)), which requires that the nature and elements of the offense be set forth. (See *People v. Lutz* (1978), 73 Ill. 2d 204, 383 N.E.2d 171.) Defendant first contends that the element of the offense that the act be performed "in his official capacity" is not alleged with sufficient specificity. That element was alleged substantially in the language of the statute, and defendant

argues that more specific facts showing how the purchase of the weapon was performed in his official capacity must be alleged.

In *People v. Banks* (1979), 75 Ill. 2d 383, 392, 388 N.E.2d 1244, 1248, our supreme court stated:

"This court has consistently held that an indictment which charges an offense in the language of the statute is sufficient if the words of the statute particularize the offense so that an accused is apprised, with reasonable certainty, of the precise offense. [Citations.] Such specificity is required in order to inform the accused, thus facilitating a competent defense preparation, and to permit the accused to plead a judgment as a bar to a future prosecution for the same offense. [Citation.] On the other hand, this court has discouraged verbosity:

'[T]hese great niceties and strictness in pleadings should only be countenanced when it is apparent defendant might be surprised on the trial or unable to meet the charge, and beyond this particularity of specification, might furnish a means of evading the law rather than defending against accusation.' [Citation.]"

In light of these standards, we believe the indictment alleged the element at issue with sufficient specificity. Defendant was informed that he was being charged with purchasing, with intent to obtain a personal advantage for himself, a confiscated weapon held pursuant to law by the Marquette Heights Police Department, in his official capacity, or, as that term has been construed, by exploitation of his position as mayor. Certainly, that information is sufficient to facilitate competent defense preparation. Moreover, the date, along with the specific act alleged, serve to protect defendant from further prosecution for the same offense. To require more specific facts showing how defendant exploited his position as mayor to purchase the weapon would be to insist on the "great niceties and strictness in pleadings" which our supreme court has condemned.

Defendant's final contention is that the indictment fails to allege the element that the act be "in excess of his lawful authority" with sufficient specificity. He claims that more detailed allegations showing why the purchase of the weapon was in excess of his lawful authority are required. We disagree, because the facts alleged clearly show his lack of authority. At the time of the alleged offense, section 24—6 of the Criminal Code of 1961 provided:

"(a) Upon conviction of a violation of Section 24—1 or Section 24—3.1 of this Article, any weapon seized shall be confiscated by the trial court.

(b) Any stolen weapon so confiscated, when no longer needed

for evidentiary purposes, shall be returned to the person entitled to possession if known. All other confiscated weapons after the disposition of a criminal case and when no longer needed for evidentiary purposes, and when in due course no legitimate claim has been made for such weapons, the court may transfer such weapons to the sheriff of the county who shall proceed to destroy them, or may in its discretion order such weapons preserved as property of the governmental body whose police agency seized the weapon. * * *." (Ill. Rev. Stat. 1977, ch. 38, par. 24—6.)

Under this statute if confiscated weapons are not returned to the person entitled to possession or destroyed, they are to be "preserved as property" of the appropriate governmental body. Sales of such weapons are unauthorized. Consequently, the mayor would clearly have been acting outside the law in participating in a prohibited transaction with his own police department. Defendant's argument is without merit.

For the reasons stated above, the order of the Circuit Court of Tazewell County dismissing the indictment is reversed, and the cause is remanded for further proceedings.

Reversed and remanded.

STOUDER and SCOTT, JJ., concur.