THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
WANDA BRANDSTETTER, Defendant-Appellant.

Fourth District   No. 16801

Opinion filed January 8, 1982.

Sheila Murphy and John Patrick Michael Murphy, both of The Murphy Law Firm, of Chicago, for appellant.

J. William Roberts, State's Attorney, of Springfield (Phyllis J. Perko and Larry Wechter, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

David Goldberger, Kathryn Haller, and Rhonda Rivera, all of Columbus, Ohio, *pro bono publico*.

Julius Lucius Echeles and Caroline Jaffe, both of Chicago, for *amicus curiae*.

PRESIDING JUSTICE GREEN delivered the opinion of the court:
After a trial by jury in the circuit court of Sangamon County, defendant, Wanda Brandstetter, was convicted on August 22, 1980, of the offense of bribery (Ill. Rev. Stat. 1979, ch. 38, par. 33—1(a)). On November 7, 1980, she was fined $500 and placed on conditional discharge requiring her to perform 150 hours of public service work. The case arose from an occurrence on May 14, 1980, in Springfield, when, pursuant to conversations concerning the proposed Equal Rights Amendment to the Federal Constitution (ERA), defendant handed to State Representative Nord Swanstrom a note on which was handwritten: "Mr.

Swanstrom the offer for help in your election & $1000 for your campaign for Pro ERA vote." She has appealed. We affirm.

Although defendant makes numerous claims of error, the major thrust of her argument is that even construing the evidence most strongly against her, she was acting pursuant to her first amendment rights of freedom of speech to petition her government for redress of grievance. She maintains she did not violate any statute but, if she did, that statute was unconstitutional, at least as applied to what she was doing. While, as we subsequently set forth, we do not agree, we recognize that her conduct differed only subtly from that which is either statutorily permitted or constitutionally protected. Much evidence was offered and argument made that defendant was a well-meaning person of high moral character. While this did not exonerate her, it was properly reflected in the very light sentence which was imposed.

Defendant's contentions on appeal are, in more detail, as follows: (1) The legislation under which she was convicted was unconstitutional because of vagueness and overbreadth and as applied to the facts of this case; (2) her guilt was not proved beyond a reasonable doubt; (3) the indictment was insufficient; (4) the trial court erred in denying her an evidentiary hearing on her claim of discriminatory prosecution; (5) the verdict finding her guilty of bribery was legally inconsistent with that acquitting her of solicitation; (6) the prosecutor's closing argument deprived her of a fair trial; and (7) the trial court erred in denying her motion to vacate her conviction on the grounds of newly discovered evidence.

Although the details of the trial evidence will be discussed in connection with the various issues, a brief reference to some of the evidence is necessary to begin that discussion. Defendant testified to having become an active volunteer for ERA in 1978 and to having traveled to Springfield on May 14, 1980. She stated that she had previously been informed that Swanstrom had been against ERA but was wavering. She testified to two encounters with Swanstrom on May 14, 1980. In the first one she told him she would spend a month in his district working for him and would raise up to $1,000 for him if he would support ERA. She said she told him he should have funds from both sides of the ERA issue so he could vote his conscience. She said she then handed him a card but he did not respond and later threw the card on the floor. Defendant further testified that she later was standing by him while he was conversing with others and she handed him the note previously described, and as he walked off with it she told him " 'whatever you do—vote your conscience.' " Defendant admitted at trial her offers were contingent upon Swanstrom's favorable vote on ERA, but stated she did

not want him to vote for ERA if it was against his conscience. In his testimony, Swanstrom stated he did not remember defendant offering to work for him for a month or to raise money for him, nor did he remember her telling him to vote his conscience.

An understanding of the issues also requires an understanding of the charge upon which defendant was convicted and the statutes involved. The charge, which was by way of an information, alleged that on May 14, 1980, defendant:

> "* * * with the intent to influence the performance of an act related to the employment and function of a public officer, Nord Swanstrom, Representative in the Illinois General Assembly for the Thirty-fifth (35th) Legislative District, tendered to Nord Swanstrom personal advantage and property, to wit: $1,000 to his campaign for his vote in favor of House Joint Resolution Constitutional Amendment #1 (The Equal Rights Amendment) which personal advantage and property Nord Swanstrom is not authorized by law to accept, in violation of the Criminal Code of 1961, as amended, Section 33—1a."

Section 33—1 of the Criminal Code of 1961 provides:

> "Bribery. A person commits bribery when:
> (a) With intent to influence the performance of any act related to the employment or function of any public officer, public employee, juror or witness, he promises or tenders to that person *any property or personal advantage which he is not authorized by law to accept.*" (Emphasis added.) Ill. Rev. Stat. 1979, ch. 38, par. 33—1(a).

Several other statutes are of significance. Section 1 of "An Act in relation to legislative conduct and prescribing penalties for the violation thereof" states:

> "No member of the General Assembly shall accept or receive, directly or indirectly, any money or other valuable thing, from any corporation, company or person, for any vote or influence he may give or withhold on any bill, resolution or appropriation, or for any other official act." (Ill. Rev. Stat. 1979, ch. 38, par. 90—1.)

Section 3—101 of the Illinois Governmental Ethics Act provides:

> "No legislator may solicit, accept, or agree to accept, gifts, loans, gratuities, discounts, favors, hospitality, or services having an aggregate value of $100 or more in any calendar year from any one person known to have legislative interests, under circumstances from which it could reasonably be inferred that a major purpose of the donor is to influence him in the performance of his official duties.

This section does not apply to (1) any political contribution, in cash or in kind, if such contribution is actually used for political purposes; (2) the purchase of tickets to, or advertisements in journals for, political or testimonial dinners; or (3) a commercially reasonable loan made in the ordinary course of business." Ill. Rev. Stat. 1979, ch. 127, par. 603—101.

Defendant maintains that section 33—1(a) is unconstitutionally vague because of the uncertain meaning of the words "property or personal advantage" and "authorized by law" as used in the statute. This court has previously stated:

> "* * * A statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application violates due process of law. (*Connally v. General Construction Co.* (1926), 269 U.S. 385, 391, 70 L. Ed. 322, 328, 46 S. Ct. 126, 127; *People v. Palkes* (1972), 52 Ill. 2d 472, 475, 288 N.E.2d 469, [471].) Moreover, a law fails to meet the requirements of due process if it is so vague and standardless that it leaves the public uncertain as to the conduct it prohibits or leaves judges and jurors free to decide, without any legally fixed standards, what is or is not prohibited in any given case." *People v. McPherson* (1978), 65 Ill. App. 3d 772, 775, 382 N.E.2d 858, 860.

■■ Where a first amendment issue exists, a statute is required to possess a greater degree of specificity than in other contexts. (*Smith v. Goguen* (1974), 415 U.S. 566, 39 L. Ed. 2d 605, 94 S. Ct. 1242.) In *Buckley v. Valeo* (1976), 424 U.S. 1, 46 L. Ed. 2d 659, 96 S. Ct. 612, the United States Supreme Court stated that the first amendment affords the broadest protection to the discussion of public issues and debate on the qualifications of candidates in order to " 'assure [the] unfettered interchange of ideas for the bringing about of political and social changes desired by the people.' " (424 U.S. 1, 14, 46 L. Ed. 2d 659, 685, 96 S. Ct. 612, 632.) However, that court did not state directly whether lobbying involves an exercise of first amendment rights. In *Eastern R.R. Presidents Conference v. Noerr Motor Freight, Inc.* (1961), 365 U.S. 127, 5 L. Ed. 2d 464, 81 S. Ct. 523, the United States Supreme Court held antitrust legislation not to cover lobbying activity, stating that to do so would create a confrontation with first amendment rights. Because lobbying, as that term is used in the broad sense, was involved in the conduct giving rise to defendant's conviction, we examine section 33—1(a) in the light of the specificity required in first amendment cases.

In *People v. Kleffman* (1980), 90 Ill. App. 3d 1, 412 N.E.2d 1057, the court held the phrase "personal advantage" in section 33—3(c) of the

Code (Ill. Rev. Stat. 1979, ch. 38, par. 33—3(c)) not to be unconstitutionally vague. That legislation defined one type of official misconduct as conduct by the official committed "[w]ith intent to obtain a personal advantage for himself or another." The court described the phrase in the context of the statute to mean "an advantage to a particular person as opposed to the public the officer or employee serves." (90 Ill. App. 3d 1, 4, 412 N.E.2d 1057, 1061.) A Wisconsin bribery statute making similar use of the phrase "personal advantage" (Wis. Stat. Ann. §946.10 (West 1958)) was held to be sufficiently specific. (*State v. Alfonsi* (1967), 33 Wis. 2d 469, 147 N.W.2d 550.) In *People v. Witzkowski* (1972), 53 Ill. 2d 216, 290 N.E.2d 236, one convicted of the offense of interference with a public institution of higher education in violation of section 21.2—2 of the Code (Ill. Rev. Stat. 1969, ch. 38, par. 21.2—2) claimed that statute to be void for vagueness. The charges arose from the defendant's participation in a sit-in protest in a public building. The supreme court upheld the statute, saying:

> "Here the conduct described in the complaint leaves no uncertainty as to the nature of the conduct upon which the charge is based, and as we said in *Vandiver*, 'We will not * * * conjecture as to the statute's application to situations less clear.' 51 Ill. 2d 525, 530." 53 Ill. 2d 216, 220, 290 N.E.2d 236, 239.

██ In the instant case defendant was charged with tendering, with a certain mental state, "personal advantage and property, to wit: $1000 to [Nord Swanstrom's] campaign." This charge left no uncertainty as to the nature of that tendered to Swanstrom, namely $1,000 in money to be used in his campaign. We need not conjecture what "personal advantage" might mean in the context of other charges. Here, its meaning was sufficiently specific to meet the specificity required even when first amendment rights are at issue.

The meaning of the phrase "which he is not authorized by law" contained in section 33—1(a) relates to several of defendant's claims of error. In maintaining that the words lack specificity, she cites *International Society for Krishna Consciousness, Inc. v. Rochford* (7th Cir. 1978), 585 F.2d 263. An ordinance, whose validity was in issue in that case, stated " '[p]ersons authorized by law to distribute literature, or solicit contributions may do so only in public areas of Chicago airports.' " (585 F.2d 263, 267.) In holding the enactment void for vagueness, the court determined the language to be ambiguous because it implied there were persons who were not authorized by law to distribute or solicit, yet no guidelines had been provided to determine who those people were. The court further concluded that, under the circumstances, an airport official could make an arbitrary determination that one seeking to distribute or solicit was not

authorized by law to do so anywhere within the airport and then impose a prior restraint on that person from doing so.

Section 3—101 of the Illinois Governmental Ethics Act (Ill. Rev. Stat. 1979, ch. 127, par. 603—101) places a limit on those things of value a legislator may receive personally from persons with a "legislative interest," when the legislator might reasonably infer a major purpose of the donor was to influence performance of his official duties.

The term "legislative interest" is defined as "a substantial economic interest, distinct from that of the general public, in one or more legislative matters." (Ill. Rev. Stat. 1979, ch. 127, par. 601—106.) We interpret the provision of the second paragraph of section 3—101, which states that the foregoing is inapplicable to campaign contributions properly used, to authorize by law a legislator to receive contributions for general campaign uses even though they are given for the purpose of influencing the legislator's performance of his official duties. However, we interpret the statutory prohibition against a legislator "directly or *indirectly*" (emphasis added) receiving things of value "for any vote * * *" (Ill. Rev. Stat. 1979, ch. 38, par. 90—1) to prohibit a legislator from receiving a campaign contribution in exchange for an agreement to vote in a particular way.

We thus conclude that the Illinois statutory scheme defines with specificity "property or personal advantage" which a legislator is "authorized by law" to accept. By analogy, it is also clear that other public officials are "authorized by law" to receive campaign contributions from those who might seek to influence the candidate's performance as long as no promise for or performance of a specific official act is given in exchange.

■■ Our interpretation of the previously described legislation negates defendant's claim that section 33—1(a) of the Criminal Code of 1961 is overbroad. When legitimate governmental purposes tend to stifle individual rights or liberties, particularly those connected with the first amendment, and the same end can be achieved by less drastic means, the overbreadth doctrine requires that the less drastic means be used. (*Gooding v. Wilson* (1972), 405 U.S. 518, 31 L. Ed. 2d 408, 92 S. Ct. 1103; *Shelton v. Tucker* (1960), 364 U.S. 479, 5 L. Ed. 2d 231, 81 S. Ct. 247.) Defendant maintains that section 33—1(a) prohibits even an offer of campaign services by a prospective worker to a candidate if the worker had the intent to influence the candidate's performance of his duties. However, we conclude that section 33—1(a) does not do so as long as the candidate neither makes a promise to perform nor performs in consideration of the offer.

■■■ Defendant places major emphasis upon her contention that, at least as applied to the facts of this case, section 33—1(a) is unconstitutional. She

maintains that (1) all campaign support offered to a candidate is constitutionally protected if offered for a "public interest" issue as opposed to a "private interest issue," and (2) any offer she may have made of a campaign contribution could not constitute bribery since it was coupled with an offer of campaign support. As this claim is limited to the facts of this case, we consider this issue in the light of our conclusion, later explained, that the evidence was sufficient here for the jury to have found beyond a reasonable doubt that defendant offered property to Swanstrom's campaign contingent upon his favorable vote for ERA. No statute can be used to punish constitutionally protected activity. (*Watts v. United States* (1969), 394 U.S. 705, 22 L. Ed. 2d 664, 89 S. Ct. 1399.) In order to avoid confrontation with first amendment rights, antitrust legislation has been considered not to cover lobbying activities. (*Eastern R.R. Presidents Conference v.Noerr Motor Freight, Inc.* (1961), 365 U.S. 127, 5 L. Ed. 2d 464, 81 S. Ct. 523.) However, no showing was made there that the lobbying envisioned consisted of the making of a promise or tender of property in exchange for a vote or promise to make a vote. No cited cases there held that a lobbyist or other citizen has a constitutional right to do so.

Defendant's theory that offers of campaign support on behalf of a "public interest" issue should be treated differently than those on behalf of a "private interest" stems from section 1—109 of the Illinois Governmental Ethics Act which, for purposes of the Act, defines "lobbying" as follows:

> " 'Lobbying' means promoting or opposing in any manner the passage by the General Assembly of any legislative matter affecting the interests of any individual, association or corporation as distinct from those of the people of the State as a whole." Ill. Rev. Stat. 1979, ch. 127, par. 601—109.

Section 3—101 of the Illinois Governmental Ethics Act also makes a distinction between the receipt of property by legislators from persons who have substantial economic interest in legislation and from those whose interest is only that of the general public. The evidence makes no showing defendant was a lobbyist, but neither section purports to authorize any person, lobbyist or not, to promise or tender property to a legislator in exchange for a vote. Nor does any Illinois statute authorize a legislator to receive the same from any such person. The prohibition against that type of conduct is provided for by other legislation which makes no distinction as to the type of interest the donor may have in the legislation (Ill. Rev. Stat. 1979, ch. 38, par. 90—1). Thus, the laws of this State make some distinctions between the interest of those promoting legislation, but the distinctions do not apply to all types of such promotion. We are aware of no authority that such distinction is constitutionally required.

Defendant's theory that because she also offered campaign help to Representative Swanstrom section 33—1(a) could not be used to punish her for also tendering property to him in exchange for his vote on ERA is based upon *Street v. New York* (1969), 394 U.S. 576, 22 L. Ed. 2d 572, 89 S. Ct. 1354. There a conviction for violation of a New York statute prohibiting desecration of the American flag was held to be invalid because the defendant's conduct in burning a flag was accompanied by the exercise of free speech in decrying the treatment that had been accorded Mr. James Meredith, a civil rights leader who had been shot by a sniper. The court concluded that the conviction could have been based upon the defendant's statements rather than the burning of the flag.

In *Street*, the charge made reference to the words of protest used by the defendant and the record of the bench trial did not reveal whether the judge had considered the words as part of the offense. Even assuming *arguendo* that all of defendant's spoken words here were constitutionally protected as an exercise of her first amendment rights, those words were not so intertwined with her offense as was the case in *Street*. The charge specifically set forth her conduct as the tender of the $1,000. The record fully indicates that she was tried on that theory. She produced the evidence of the offer of her campaign support and no argument was made that she should be convicted because of it. The conviction was not rendered invalid for this reason.

■■ Defendant maintains the bribery charge was insufficient because it did not advise her how Swanstrom was "not authorized by law to accept" her alleged offer of $1,000 to his campaign. She relies upon *People v. Adams* (1978), 64 Ill. App. 3d 547, 381 N.E.2d 738, and *People v. Campbell* (1972), 3 Ill. App. 3d 984, 279 N.E.2d 123. In *Adams*, the defendant was convicted of a violation of section 33—3(b) of the Criminal Code of 1961 (Ill. Rev. Stat. 1975, ch. 38, par. 33—3(b)) prohibiting a public employee from knowingly performing "an act which he knows he is forbidden by law to perform." The court deemed the charge to merely state that the defendant had cut down a tree on private property with State equipment on State time. The court deemed the statutory requirement that the defendant knew he was forbidden to do the act to be crucial. The omission was held to render the charge insufficient even though raised for the first time on appeal. The court also noted that because the conduct alleged was forbidden by rule or regulation rather than statute, the charge should have set forth what the rule or regulation was which was violated. Similarly, in *Campbell*, the court held a charge under the same statutory provision to be erroneous because it failed to allege the defendant knew the conduct to be forbidden.

Under section 33—1(a) of the Code, knowledge by the defendant that the conduct is not authorized by law is not an element of the offense

and need not be alleged. The impropriety arose not from rule or regulation but from statute (Ill. Rev. Stat. 1979, ch. 38, par. 90—1). Neither *Adams* nor *Campbell* is authority that the statute making the receipt of the property by the legislator unlawful need be set forth in the charge. In *People v. Clark* (1979), 71 Ill. App. 3d 381, 389 N.E.2d 911, a charge under section 33—1(a) did not even allege that the recipient of the property or personal advantage was not authorized by law to accept the same. The charge was held to be sufficient because the circumstances set forth in the charge clearly indicated that acceptance was unauthorized. Accordingly, we deem the charge here to have been sufficient.

The evidence was sufficient for the jury to have found defendant's guilt to have been proved beyond a reasonable doubt. Defendant's testimony supplied much of the proof. She admitted handing the card to Swanstrom which on its face offered him money for his campaign in exchange for a pro-ERA vote. She admitted the offer was contingent upon his vote in favor of ERA. Defendant places great emphasis on the fact that evidence indicated Representative Swanstrom was undecided as to his vote. If that had any bearing on whether defendant committed the offense, it would be circumstantial evidence that defendant intended to influence his vote by the offer. Defendant also cites some evidence that she told Swanstrom she wanted him to vote his conscience. However, the jury could have disbelieved this testimony, particularly in view of defendant's testimony that her offer was contingent on his vote.

This case differs from *People v. Gokey* (1974), 57 Ill. 2d 433, 312 N.E.2d 637, where the court held that defendant's bribery conviction must be reversed because under the circumstances defendant's offer was hardly language seriously proposing criminal conduct. In the present case, defendant never contends that her offer was not serious and under the circumstances a jury could reasonably find the offer was serious.

The information charged that defendant "tendered" the money to Swanstrom. It did not use any form of the alternate word "promises" contained in the statute. Defendant makes a substantial argument that defendant did not tender Swanstrom $1,000. The evidence is undisputed that she had no money with her at the time, and the inferences from the circumstantial evidence were that the money would be delivered later. Within the context of contract law she may be correct.

The term "tender" is defined as follows:

"An offer of money. The act by which one produces and offers to a person holding a claim or demand against him the amount of money which he considers and admits to be due, in satisfaction of such claim or demand, without any stipulation or condition. * * *.
* * *

The actual proffer of money, as distinguished from mere pro-

posal or proposition to proffer it. Hence mere written proposal to pay money, without offer of cash, is not 'tender.' " Black's Law Dictionary 1315 (5th ed. 1979).

■■ However, in *People v. Wallace* (1974), 57 Ill. 2d 285, 290, 312 N.E.2d 263, 266, the supreme court described the offense of bribery as occurring when the accused "promises or tenders to a public official" in the manner prohibited by the statute, and then stated, "The *mere offer* or promise with the requisite intent is sufficient to constitute the completed offense of bribery." (Emphasis added.) The court thus implied that an offer was sufficient to constitute a "tender." In *People v. Mostert* (1976), 34 Ill. App. 3d 767, 340 N.E.2d 300, the court cited the foregoing to refute the claim of a defendant that use of the word "tender" in section 33—1 rendered the law unconstitutionally vague. In upholding the trial court's refusal of an instruction offered by the defendant, the *Mostert* court held the issue to have been waived but also commented that the defendant's cases cited in support of the instruction were "concerned with 'tender' in a narrow contractual setting of mutual and concurrent promises, and, as such, [were] clearly distinguishable." (34 Ill. App. 3d 767, 770, 340 N.E.2d 300, 302.) We conclude that the legislature intended the word "tender" to be used in a sense much broader than its usage in contractual law and to include the offer made by defendant, although she was not shown to have in her possession the money offered.

Prior to trial the court denied defendant's request for an evidentiary hearing on her motion to dismiss the charges because of discriminatory selective prosecution. In support of her motion she made an offer of proof, the material substance of which was the following. Defense counsel stated that if called, David Epstein, parliamentarian of the House of Representatives and a lawyer of 12 years' experience, would testify that: (1) He is often called upon to give official and unofficial advice to members as to the propriety of conduct; (2) he had seen offers of contributions conditioned upon a vote similar to that attributed to defendant; and (3) in his opinion, citizens are not prohibited by section 33—1(a) of the Criminal Code of 1961 (Ill. Rev. Stat. 1979, ch. 38, par. 33—1(a)) from offering to pledge campaign contributions contingent upon a vote.

Defendant's counsel also stated that if called, Representative Gary Hannig would testify that: (1) He received a contribution of $300 from a group called Stop-ERA in March 1980; (2) House of Representative members generally knew Stop-ERA was giving from $300 to $2,000 per member to those who voted against ERA or did not vote on the issue; (3) he received from Stop-ERA Chairman Phyllis Schlafly a note over her signature which stated:

"STOP ERA has tremendous strength in your area. We had great

returns from the 1-day anti-ERA ad. Stand firm and we will stand with you—."

Defense counsel also stated he would ask Representative Hannig whether, as stated on police reports, he was offered $10,000 to vote for ERA. Defendant also offered to show that Representative Swanstrom had contacted the Speaker of the House of Representatives about defendant's approaches to him and that they had gone to the Department of Law Enforcement prior to contacting the State's attorney of Sangamon County.

In *Yick Wo v. Hopkins* (1886), 118 U.S. 356, 30 L. Ed. 220, 6 S. Ct. 1064, the Supreme Court found equal protection was violated where a county board, having unlimited discretion to grant operating licenses to laundries located in wooden buildings, granted those licenses only to laundries operated by Caucasians and denied them to those operated by Chinese. In *Oyler v. Boles* (1962), 368 U.S. 448, 7 L. Ed. 2d 446, 82 S. Ct. 501, the prohibition against such denial of equal protection of law was extended to the prosecution of criminal cases. The court required that for an accused to invoke a defense based on that theory, he must show not only selectivity but also the application by law enforcement officials of an unjustifiable or impermissible standard in making the selection.

In *People v. Lewis* (1979), 73 Ill. App. 3d 361, 386 N.E.2d 910, defendants argued the trial court erred in denying, without an evidentiary hearing, their pretrial motions to dismiss the indictment based on discriminatory prosecution. Defendants alleged that one of the bases for their selection, was their exercise of their first amendment rights of free speech and free association. The court stated:

> "The State may not deliberately base its decision to prosecute an individual on the constitutionally protected grounds of race, religion, or the exercise of first amendment rights. (*United States v. Falk* (7th Cir. 1973), 479 F.2d 616; *United States v. Berrigan* (3d Cir. 1973), 482 F.2d 171; *United States v. Steele* (9th Cir. 1972), 461 F.2d 1148.) However, there is a presumption that any prosecution for violation of the criminal law is undertaken in good faith. (*Falk.*) To overcome this presumption and to justify the holding of an evidentiary hearing, the burden is on the defendant to present sufficient facts to make out at least a *prima facie* case of improper discrimination. *United States v. Scott* (9th Cir. 1975), 521 F.2d 1188.
>
>> 'This requires that appellant first demonstrate that others similarly situated generally have not been prosecuted for conduct similar to that for which he was prosecuted. Secondly, appellant must show that his selection was based on an impermissible ground such as race, religion or his

exercise of his first amendment right to free speech.' *Scott*, 521 F.2d 1188, 1195." (73 Ill. App. 3d 361, 364-65, 386 N.E.2d 910, 914.)

The court there found defendants' motion satisfied the first requirement by stating facts which indicated that others were not criminally prosecuted for their conduct but the motion did not meet the second requirement, as there was no showing that the selection for prosecution was deliberately based upon an unjustifiable standard such as race, religion, or other arbitrary classification.

Here, on the other hand, defendant has offered evidence sufficient to show that she was part of a group protected because they were exercising their first amendment rights in support of ERA. She has not offered to show that substantial evidence exists that designated others, not part of her group, were offering campaign contributions in exchange for a vote. Evidence that ERA opponents were offering contributions to legislators and sent one of them a note indicating they had "great returns" from an advertisement, admonishing him to "stand firm" and they would "stand with" him was not of such caliber to support prosecution.

The proffered testimony of the parliamentarian of the House of Representatives had little probative value on the issue of selective prosecution. Whether the law permits a legislator to receive a campaign contribution conditioned upon an agreement to vote in a particular way and whether a citizen may offer such a contribution was a question of law for the court. Moreover, the issue of selective prosecution concerns the failure of the State to prosecute others who may be guilty and not the prosecution of those who are not guilty. Evidence that the parliamentarian may have been giving good faith advice to legislators that offers similar to that found to have been made by defendant here may be legally accepted would be insufficient to prove that to the knowledge of the prosecutor this had happened in particular cases.

Because of the insufficiency of evidence against others, this case differs from *United States v. Steele* (9th Cir. 1972), 461 F.2d 1148. There a defendant, who was convicted of refusing to answer the questions on the census form, claimed he had been singled out for prosecution because he had publicly advocated noncompliance with census requirements. Defendant showed that at least six others had committed the same offense and were not prosecuted. The reviewing court concluded that the names of these six should have been known through the information gathering system used in the census. A special background dossier had been prepared on defendant by census technicians. The court stated that the government is not obligated to prosecute all offenders, but no effort was made by the government to justify the prosecution of defendant as a result of random selectivity. The only plausible explanation for that

defendant's prosecution was his explanation that he was being discriminated against.

We deal summarily with defendant's remaining claims. In addition to the charge for which she was convicted, defendant was charged with, but acquitted of, solicitation of legislative misconduct (Ill. Rev. Stat. 1979, ch. 38, par. 90—1). She claims the verdicts were inconsistent. We need not examine her claim for neither the legal nor logical inconsistency between verdicts of conviction and acquittal in the same case vitiate the verdict of conviction if it is properly supported by the evidence. *People v. Dawson* (1975), 60 Ill. 2d 278, 326 N.E.2d 755; *People v. Murray* (1975), 34 Ill. App. 3d 521, 340 N.E.2d 186; see also *People v. Barker* (1979), 78 Ill. App. 3d 686, 397 N.E.2d 552.

■■ ■ Once during closing argument, the prosecutor argued to the jury that the prosecution was not seeking "prison" for defendant but was asking for a conviction. An objection was sustained, and the court informed the jury that only the court had sentencing power. As candidly admitted by the prosecutor, the remark was improper. (*People v. Klapperich* (1939), 370 Ill. 588, 19 N.E.2d 579.) However, the defendant improperly implied in argument that the prosecution was a politically motivated charade designed to single out an innocent defendant for improper aims. Under the circumstances, the remark was not reversible error. Defendant's post-trial motion based on newly discovered evidence was properly denied. The new evidence claimed was cumulative to immaterial matter offered at trial. *People v. Jones* (1975), 26 Ill. App. 3d 78, 325 N.E.2d 56.

For the reasons stated, we affirm.

Affirmed.

WEBBER and TRAPP, JJ., concur.