THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. DWIGHT SELBY *et al.*, Defendants-Appellees.

Fourth District   No. 4—97—0960

Argued July 16, 1998.—Opinion filed August 11, 1998.

James E. Ryan, Attorney General, of Chicago (Barbara A. Preiner, Solicitor General, and William L. Browers and Lisa Anne Hoffman (argued), Assistant Attorneys General, of counsel), for the People.

Leonard F. Sacks (argued), of Sacks, Albrecht, Copeland, Smith & Sacks, of Kankakee, for appellees James Hand and Adrian Glenn.

Daniel D. Yuhas and Jacqueline L. Bullard (argued), both of State Appellate Defender's Office, of Springfield, for appellee Dwight Selby.

PRESIDING JUSTICE GARMAN delivered the opinion of the court:

In March 1997, a Livingston County grand jury returned indictments against defendants, Dwight Selby and James Hand, each on four counts of official misconduct (720 ILCS 5/33—3 (West 1994)) and one count of conspiracy (720 ILCS 5/8—2(a) (West 1994)). The grand jury also indicted defendant, Adrian Glenn, on two counts of official misconduct. In October 1997, the trial court dismissed the indictments, and the State appeals. For the following reasons, we reverse and remand for further proceedings.

## I. BACKGROUND

The indictments, which contain substantially the same allegations, charge defendants with the criminal offense of official misconduct in violation of sections 33—3(b) and (c) of the Criminal Code of 1961

(Code) (720 ILCS 5/33—3(b), (c) (West 1994)), based upon their violation of section 120 of title 20 of the Illinois Administrative Code (Administrative Code) (20 Ill. Adm. Code § 120 *et seq.* (1997)). Section 33—3 of the Code provides, in relevant part:

> "Official Misconduct. A public officer or employee commits misconduct when, in his official capacity, he commits any of the following acts:
>
> ***
>
> (b) Knowingly performs an act which he knows he is forbidden by law to perform; or
>
> (c) With intent to obtain a personal advantage for himself or another, he performs an act in excess of his lawful authority." 720 ILCS 5/33—3(b), (c) (West 1994).

Title 20 of the Administrative Code prescribes rules of conduct for employees of the Illinois Department of Corrections (Department). 20 Ill. Adm. Code § 120.10 (1997). Section 120.50 of title 20 of the Administrative Code, entitled "Socializing with Committed Persons," provides, in relevant part, that Department employees "shall not knowingly socialize with *** any committed person ***, except in the performance of an assignment or as approved in writing by the Director." 20 Ill. Adm. Code § 120.50 (1997). The phrase "committed person" is defined as "any person committed to the custody of the Department [of Corrections], including those persons released on parole or mandatory supervised release." 20 Ill. Adm. Code § 120.20 (1997). The terms "socializing" and "socialize" are not defined by the regulation.

The indictments concerning section 33—3(b) charge defendants:

> "[P]ublic employee[s], to wit: *** Correctional Officer[s], Illinois Department of Corrections, while acting in [their] official capacity, knowingly performed an act which [they] know[ ] is forbidden by law to perform, that law being Illinois Administrative Rules, Title 20, Corrections, Criminal Justice, and Law Enforcement, Department of Corrections, Part 120, Rules of Conduct, Section 120.50, Socializing with Committed Persons, to wit: in that *** defendant[s] socialized with *** committed person[s] *** by engaging in sexual intercourse with [them], in violation of Illinois Compiled Statutes, Chapter 720, Section 5/33—3(b) ***."

With respect to section 33—3(c), the indictments charge defendants:

> "[P]ublic employee[s], to wit: *** Correctional Officer[s], Illinois Department of Corrections, while acting in [their] official capacity, with intent to obtain a personal advantage for [themselves], [they] performed an act in excess of [their] lawful authority, in that while on duty [they] performed an act that [they] know[ ] is forbidden by law to perform [*sic*], that law being Illinois Administrative Rules, Title 20, Corrections, Criminal Justice, and Law Enforcement,

Department of Corrections, Part 120, Rules of Conduct, Section 120.50, Socializing with Committed Persons, to wit: in that *** defendant[s] engaged in sexual intercourse with [committed persons], in violation of Illinois Compiled Statutes, Chapter 720, Section 5/33—3(c) ***."

Defendants Selby and Hand were further charged with conspiring to commit the offense of official misconduct in violation of section 8—2(a) of the Code (720 ILCS 5/8—2(a) (West 1996)).

On May 5, 1997, defendants Hand and Glenn filed motions to dismiss the indictments, arguing, *inter alia*, section 120.50 of title 20 of the Administrative Code was *too vague to form* the basis of the State's charges of official misconduct. Following arguments by the parties, the trial court granted the motion and dismissed the indictments against defendants Hand and Glenn and, *sue sponte*, the indictments against defendant Selby. The trial court dismissed the charges on the grounds that the term "socializing" as used in section 120.50 was unconstitutionally vague as applied to defendants' conduct and that the regulation failed to identify a violation as a criminal offense or to specify criminal penalties therefor. The State now appeals.

## II. ANALYSIS

### A. Jurisdiction

■ Defendant Selby initially challenges this court's jurisdiction to hear the matter. According to Selby, the State was required to appeal the trial court's ruling directly to the Supreme Court of Illinois. Under the Illinois Constitution, a direct appeal to the supreme court from a trial court ruling is proper whenever provided for by supreme court rule. Ill. Const. 1970, art. VI, § 4(b). Supreme Court Rule 603 directs all appeals from criminal cases "in which a statute of the United States or of this State has been held invalid" to be filed directly with the supreme court. 134 Ill. 2d R. 603. Citing *In re Marriage of Lappe*, 176 Ill. 2d 414, 680 N.E.2d 380 (1997), Selby argues the trial court's ruling effectively renders section 33—3 of the Code unconstitutional and, therefore, urges this court to transfer the State's appeal of his case to the supreme court pursuant to Supreme Court Rule 365 (155 Ill. 2d R. 365).

In *Lappe*, the supreme court discussed its jurisdiction under Supreme Court Rule 302(a)(1) (134 Ill. 2d R. 302(a)(1)), the civil counterpart to Rule 603. Rule 302(a)(1) provides for appeals to be taken directly to the supreme court from final judgments of circuit courts "in [civil] cases in which a statute of the United States or of this State has been held invalid." 134 Ill. 2d R. 302(a)(1). In *Lappe*, sections 10—1 and 10—10 of the Illinois Public Aid Code (305 ILCS 5/10—1,

10—10 (West 1994)), which allowed the Illinois Department of Public Aid the discretion to intervene on behalf of any parent seeking the collection of child support and to provide enforcement services, were challenged as void on the ground they violated the constitutional mandate that public funds be used exclusively for public purposes. The circuit court found that, while the statutory provisions allowing intervention were not invalid on their face, they were unconstitutional as applied to the custodial parent involved in the case because his annual earnings were sufficient to enable him to pursue enforcement proceedings without the agency's assistance. *Lappe*, 176 Ill. 2d at 418-19, 680 N.E.2d at 382-83.

After the case was transferred to the supreme court, the noncustodial parent challenged the court's jurisdiction under Rule 302(a)(1). She argued the circuit court's ruling did not hold the public aid statute unconstitutional but, rather, held only that the statute was unconstitutional "as applied" in that case. Citing *Rehg v. Illinois Department of Revenue*, 152 Ill. 2d 504, 605 N.E.2d 525 (1992), *overruled on other grounds in Wilson v. Department of Revenue*, 169 Ill. 2d 306, 662 N.E.2d 415 (1996), she contended the supreme court lacked jurisdiction to review such "as applied" findings of unconstitutionality. The supreme court disagreed, finding the "as applied" interpretation asserted by the parent to be too narrow a reading of the circuit court's decision. *Lappe*, 176 Ill. 2d at 419-20, 680 N.E.2d at 383.

In considering its jurisdiction under Rule 302(a)(1), the supreme court noted a circuit court order that " 'simply declares that application of [a] statute would violate a particular defendant's constitutional rights' " is not directly appealable to the supreme court. *Lappe*, 176 Ill. 2d at 420, 680 N.E.2d at 383, quoting *Rehg*, 152 Ill. 2d at 509, 605 N.E.2d at 528. Conversely, the court stated a direct appeal may be taken under Rule 302(a)(1) when "the effect of the circuit court's order [is] to declare a statute unconstitutional on its face." *Lappe*, 176 Ill. 2d at 420, 680 N.E.2d at 383. In making this determination, the court stressed consideration must be given to the effect of the circuit court's order and not merely to what is stated therein. *Lappe*, 176 Ill. 2d at 420, 680 N.E.2d at 383-84.

Applying the above principles, the supreme court concluded the effect of the circuit court's decision was to invalidate portions of sections 10—1 and 10—10 of the Public Aid Code. The court explained the circuit court's ruling actually declared the Public Aid Code, in part, unconstitutional on its face because it applied not only to the custodial parent involved in the case, but also to other parents who were "financially capable." *Lappe*, 176 Ill. 2d at 421-22, 680 N.E.2d at 384. The court recognized that, as a result of the circuit court's deci-

sion, the agency no longer had the discretion to intervene and provide child support enforcement services "to *any* individual who applies for them." (Emphasis in original.) *Lappe*, 176 Ill. 2d at 421, 680 N.E.2d at 384. Instead, the agency could exercise its discretion in cases only where the applicants possessed inadequate financial resources. Because part of the Public Aid Code was rendered unconstitutional on its face, the court found jurisdiction under Rule 302(a)(1). *Lappe*, 176 Ill. 2d at 422, 680 N.E.2d at 384. Selby has not cited, and we have not found, any case specifically discussing the jurisdictional scope of Rule 603. Nonetheless, the supreme court's decision in *Lappe* provides the necessary framework in which to analyze Selby's challenge of jurisdiction in this case.

■ Unlike the effect of the circuit court's ruling on the Public Aid Code in *Lappe*, the trial court's ruling here does not effectively invalidate any portion of the official misconduct statute. Nothing in the trial court's order affects the further application of the statute's provisions. Selby maintains that, pursuant to *Lappe*, whenever a trial court's ruling results in a finding of unconstitutionality based upon a statute's effect upon a particular class of individuals, jurisdiction properly lies with the supreme court. He argues, because the trial court's ruling affects that class of individuals who are charged with official misconduct based upon a violation of section 120.50 of title 20 of the Administrative Code, it renders section 33—3 of the Code unconstitutional on its face. Selby misconstrues the *Lappe* decision. The supreme court's finding of jurisdiction in *Lappe* did not rest on who was affected by the circuit court's ruling but, rather, on how the ruling altered the agency's discretion under the Public Aid Code. Because the trial court's ruling does not affect the validity of section 33—3, we may properly hear the State's appeal of Selby's case. Accordingly, Selby's request to transfer under Rule 365 is denied.

### B. Section 120.50 of Title 20 of the Administrative Code

#### 1. *Constitutionality*

■ The State argues the trial court erred in finding section 120.50 of title 20 of the Administrative Code constitutionally infirm. According to the State, the terms "socializing" and "socialize" as used in section 120.50 are not unconstitutionally vague and are sufficiently definite to encompass sexual intercourse with prison inmates. We initially stress administrative rules and regulations have the force and effect of law and, like statutes, are presumed valid. *Northern Illinois Automobile Wreckers & Rebuilders Ass'n v. Dixon*, 75 Ill. 2d 53, 58, 387 N.E.2d 320, 323 (1979). This court has a duty to affirm the constitutionality of a rule or regulation if reasonably possible, and if

their construction is doubtful, any doubts will be resolved in favor of the challenged law's validity. *Granite City Division of National Steel Co. v. Illinois Pollution Control Board*, 155 Ill. 2d 149, 164-65, 613 N.E.2d 719, 726 (1993). When construing a rule or regulation, the same standards that govern the construction of statutes will be applied. *Northern Illinois Automobile Wreckers*, 75 Ill. 2d at 58, 387 N.E.2d at 323. The fundamental rule of statutory construction is to effectuate the intent of the lawmakers (see *City of Chicago v. Morales*, 177 Ill. 2d 440, 448, 687 N.E.2d 53, 59 (1997)) and, in doing so, this court must look to the specific language of the rule or regulation and evaluate the wording in its entirety. See *People v. Brooks*, 158 Ill. 2d 260, 264, 633 N.E.2d 692, 694 (1994). In addition to the language used, this court will consider the administrative objective and the evil the rule or regulation is designed to remedy. See *People v. Meyers*, 158 Ill. 2d 46, 59, 630 N.E.2d 811, 818 (1994).

■ Vagueness challenges to rules or regulations involving freedoms protected under the first amendment must be examined in light of the facts of the case at hand. If, however, the rule or regulation in question implicates first amendment freedoms, the law may be attacked facially, which allows a party to argue not only that the law is vague as applied in the particular case, but also that it might be vague as applied to someone else. See *People v. Jihan*, 127 Ill. 2d 379, 385-86, 537 N.E.2d 751, 754 (1989). The parties here disagree on the appropriate standard for this court's analysis. The State contends this case does not implicate first amendment rights and, therefore, urges this court to focus solely on whether section 120.50 provides clear notice that sexual relations with prison inmates is prohibited activity. Defendants, on the other hand, contend consensual sexual intercourse between adults is the type of "intimate" relationship protected under the first amendment (see *Roberts v. United States Jaycees*, 468 U.S. 609, 618-22, 82 L. Ed. 2d 462, 471-74, 104 S. Ct. 3244, 3250-52 (1984)), and, thus, maintain this court may properly examine the constitutionality of section 120.50 as applied to other individuals. We decline defendants' invitation to consider whether the sexual relations involved in this case are sufficiently "intimate" to warrant first amendment protection and, for purposes of this appeal, will assume such relations are so protected because, even if a facial analysis is applied, section 120.50 is sufficiently clear to satisfy constitutional mandates.

■ Due process requires the language of a rule or regulation to "convey with sufficient certainty fair warning and notice of what constitutes prohibited conduct," and what is fair and adequate is to be measured by common understanding and practices. *Granite City*, 155 Ill. 2d at 164, 613 N.E.2d at 725. Impossible levels of specificity,

however, are not required (*Granite City*, 155 Ill. 2d at 164, 613 N.E.2d at 725), and the law need not particularize all the different kinds of conduct that may fall within its scope. See *People v. Wisslead*, 108 Ill. 2d 389, 398, 484 N.E.2d 1081, 1084 (1985). For a rule or regulation to be considered unconstitutionally vague on its face, the law must be impermissibly vague in all its applications. See *Granite City*, 155 Ill. 2d at 163, 613 N.E.2d at 725, citing *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 494-95, 71 L. Ed. 2d 362, 369, 102 S. Ct. 1186, 1191 (1982). That is, the law must be "incapable of any valid application in the sense that no standard of conduct is specified at all." *People v. Burpo*, 164 Ill. 2d 261, 266, 647 N.E.2d 996, 999 (1995); see also *Granite City*, 155 Ill. 2d at 163-64, 613 N.E.2d at 725 (rule or regulation void where language appears, on its face, to have a meaning but to which it is impossible to give any precise or intelligible application in the circumstances under which it is intended to operate). Where the rule or regulation "leaves the regulated community unsure of what conduct is prohibited or fails to provide adequate guidelines to the administrative body charged with its enforcement," due process is violated and the law is invalid. *Granite City*, 155 Ill. 2d at 163, 613 N.E.2d at 725.

As the parties note, the terms "socializing" and "socialize" are not defined within title 20 of the Administrative Code, and we have not found any decision interpreting these terms in any context. In absence of such guidance, this court will assign the words of the rule or regulation their ordinary or popularly understood meaning. See *People v. Lowe*, 202 Ill. App. 3d 648, 653, 560 N.E.2d 438, 441 (1990). The term "socializing" is defined as "[t]hat socializes or renders social" or "that revels in participating in social activities." XV Oxford English Dictionary 911 (2d ed. 1989). "Socialize" is defined as "[t]o render social" or "[t]o be sociable" (XV Oxford English Dictionary 910-11 (2d ed. 1989)), and to "enter into or maintain personal relationships with others" (Webster's Third New International Dictionary 2162 (3d ed. 1981)). "Social" and "sociable," in turn, are respectively defined as "[m]arked or characterized by mutual intercourse, friendliness, or geniality; enjoyed, taken, spent, etc., in company with others, esp. with those of a similar class or kindred interests" and "[c]haracterized by, pertaining to, contact, intercourse, or companionship with others, esp. in a friendly or pleasant manner." XV Oxford English Dictionary 904-05 (2d ed. 1989).

Taking the terms at issue in context here, section 120.50 clearly prohibits Department employees from developing and engaging in close personal relations with prison inmates. Not all employee-inmate interaction, however, is proscribed. The rule explicitly allows employ-

ees to interact with inmates to the extent necessary in performing job-related functions and in situations deemed appropriate by the Director of the Department. By limiting the types of contact an employee may have with an inmate, section 120.50 provides sufficiently clear standards to govern its enforcement. We recognize administrative rules like section 120.50 that limit employee relationships with certain third parties are designed to maintain an agency's integrity and reputation and to assure the duties and responsibilities of its employees are not compromised by outside influences. *Cf. Merrifield v. Illinois State Police Merit Board*, 294 Ill. App. 3d 520, 522, 529, 691 N.E.2d 191, 194, 198 (1997) (recognizing Illinois State Police rule prohibiting police officers from maintaining "regular or continuous associations or dealings" with persons under criminal investigation or otherwise having a reputation for criminality is essential in maintaining the integrity and reputation of department). Section 120.50 adequately conveys the intent of the Department and, contrary to the trial court's determination, is not so indefinite or uncertain to preclude its application.

### 2. *Criminal Offense and Penalty*

■ The State additionally argues the failure of section 120.50 to specifically identify a violation as a criminal offense, or to set forth a criminal punishment therefor, does not necessitate dismissal of the State's charges. We agree. The law is well established that an administrative rule or regulation need not provide for criminal sanctions or constitute a criminal offense in order to form the basis of an official misconduct charge. *People v. Samel*, 115 Ill. App. 3d 905, 911-12, 451 N.E.2d 892, 896-97 (1983); *People v. Thoms*, 50 Ill. App. 3d 398, 401-02, 365 N.E.2d 717, 719 (1977) (prosecution under section 33—3(b) could be based upon violations of supreme court rules that did not constitute a criminal offense or provide for penalties); see also *People v. Davis*, 281 Ill. App. 3d 984, 989, 668 N.E.2d 119, 123 (1996) (holding official misconduct charge can be based on violation of administrative rule or regulation, despite that rule or regulation not carrying any criminal penalty). Accordingly, defendants may be charged under sections 33—3(b) and (c) of the Code even though section 120.50 neither explicitly constitutes a criminal offense nor contains a penalty provision.

### C. Sufficiency of Indictments Against Selby

■ Defendant Selby contends that, if this court should find section 120.50 valid, it should nevertheless affirm the dismissal of the State's charges against him because the indictments fail to adequately allege violations of the official misconduct statute. When, as here, the sufficiency of a charging instrument is challenged before trial, this court

must determine whether the instrument strictly complies with the mandates of section 111—3 of the Code of Criminal Procedure of 1963 (725 ILCS 5/111—3 (West 1994)). *People v. DiLorenzo*, 169 Ill. 2d 318, 321-22, 662 N.E.2d 412, 413 (1996). Section 111—3 is designed to inform the defendant of the nature of the charges against him so as to allow him to prepare a defense and to assure the charged offense may serve as a bar to subsequent prosecutions for the same conduct. *Meyers*, 158 Ill. 2d at 51-52, 630 N.E.2d at 815.

Section 111—3(a) requires the charging document to be in writing and to state the name of the offense, the relevant statutory provision violated, the nature and elements of the offense charged, and the name of the accused if known or a reasonably certain description. 725 ILCS 5/111—3(a) (West 1994). The only issue here is whether the indictments against Selby sufficiently set forth the nature and elements of the offense of official misconduct.

To sustain a charge under either section 33—3(b) or (c) of the Code, the acts constituting the alleged offense must have been committed in the defendant's "official capacity." " '[A]n act is performed in one's official capacity if it is accomplished by exploitation of his position as a public officer or employee.' " *People v. Gray*, 221 Ill. App. 3d 677, 681, 583 N.E.2d 109, 111 (1991), quoting *People v. Kleffman*, 90 Ill. App. 3d 1, 3, 412 N.E.2d 1057, 1060 (1980); see also *Samel*, 115 Ill. App. 3d at 908, 451 N.E.2d at 895 ("official capacity" refers to the manipulation of public office or employment "in order to achieve illicit gain or perform a proscribed act"). The indictments here allege Selby, "while acting in his official capacity" as a correctional officer, violated section 120.50 of title 20 of the Administrative Code by engaging in sexual intercourse with prison inmates. Selby argues that, assuming he had sexual intercourse with prisoners, the State's allegations are insufficient to show he acted in his official capacity. That is, he contends the allegations fail to demonstrate his conduct at issue resulted from the exploitation of his position as correctional officer. Contrary to Selby's suggestion, the State is not yet required to prove the elements of the offense charged in the indictments, but need only sufficiently allege those elements. The indictments here sufficiently apprise Selby he used his employment position to engage in proscribed activity. See *Kleffman*, 90 Ill. App. 3d at 5, 412 N.E.2d at 1061 (finding allegation defendant unlawfully purchased weapon "in his official capacity" as mayor sufficient to sustain indictment under section 33—3).

Selby alternatively argues counts II and IV of the indictments charging violations of section 33—3(c) are deficient because sexual activity with prison inmates is not a "personal advantage" as

contemplated by that provision. A charge brought under section 33—3(c) requires the State to allege and prove the defendant, a public officer or employee, while in his official capacity, exceeded his lawful authority by performing an act with the "intent to obtain a personal advantage for himself or another." 720 ILCS 5/33—3(c) (West 1994); *People v. Mehelic*, 152 Ill. App. 3d 843, 849, 504 N.E.2d 1310, 1314 (1987). For purposes of section 33—3(c), "personal advantage" refers to "an advantage to a particular person as opposed to the public the officer or employee serves." *Kleffman*, 90 Ill. App. 3d at 4, 412 N.E.2d at 1061. Counts II and IV of the indictments simply allege Selby engaged in sexual intercourse with prison inmates "with the intent to obtain a personal advantage for himself." The allegations do not specifically identify the advantage Selby sought to obtain.

As Selby notes, most cases addressing charges under section 33—3(c) have involved situations where the defendant has obtained a pecuniary or tangible benefit through the abuse of his public office or position. On this basis, Selby urges this court to construe the phrase "personal advantage" to include only such instances. Our research has uncovered only one case where the personal advantage received by the defendant appeared to be nonpecuniary. In *People v. Lewis*, 269 Ill. App. 3d 523, 646 N.E.2d 305 (1995), the defendant, a probation officer, was convicted of three counts of official misconduct under section 33—3(c) on the basis of sexual improprieties with a number of women under his supervision. In that case, however, the defendant did not challenge, and this court did not address, whether the misconduct at issue could be considered a "personal advantage" under section 33—3(c). Nevertheless, we will refrain from defining the precise scope of the phrase "personal advantage" at this stage. The fact most reported decisions involve a pecuniary or tangible benefit to the defendant does not preclude the State from proving, and a jury or judge from finding, Selby's alleged misconduct here was done with the intent to obtain a personal advantage. Although counts II and IV could have specifically set forth the particular advantage sought by Selby, the allegations are nonetheless sufficient to apprise him of the nature of the offense charged. To the extent Selby seeks to learn the particular advantage the State alleges he intended to obtain, he may move for a bill of particulars upon remand. We conclude the indictments adequately charge Selby with the offense of official misconduct under sections 33—3(b) and (c) of the Code.

### III. CONCLUSION

For the foregoing reasons, we conclude the trial court erred in

dismissing the indictments against defendants and, accordingly, reinstate the State's charges and remand for further proceedings.

Reversed and remanded.

GREEN and STEIGMANN, JJ., concur.